UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Dessalines Weaver,
    Petitioner

vs                                    Case No. 1:06cv557
                                       (Spiegel, S.J.; Hogan, M.J.)

Ernie Moore,
    Respondent

### REPORT AND RECOMMENDATION

Petitioner, a prisoner in state custody at the Lebanon Correctional Institution in Lebanon, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition and respondent's "Answer" with exhibits. (Docs. 3, 8).

### Factual And Procedural Background

On August 1, 2001, the Hamilton County, Ohio, grand jury returned an indictment charging petitioner with three counts of forgery in violation of Ohio Rev. Code § 2913.31(A)(3); two counts of theft in violation of Ohio Rev. Code § 2913.02(A)(3); and one count of possessing criminal tools in violation of Ohio Rev. Code § 2923.24(A). (Doc. 8, Ex. 1).[1]

On February 13, 2002, petitioner entered a guilty plea to the three forgery

---

[1] The indictment contained two additional forgery counts against Damon Barnes (Second Count) and Denice Bell (Third Count). (Doc. 8, Ex. 1). One of the forgery charges against petitioner also included Damon Barnes as a co-defendant (First Count), and Barnes, Bell and petitioner were all charged as co-defendants in the possessing criminal tools count (Fourth Count). (*Id.*).

charges against him and to the possession of criminal tools count in exchange for the dismissal of the two theft counts. (*See id.,* Exs. 2-3). The plea entry signed by petitioner, which was filed with the court, provided in pertinent part:

> I understand the maximum penalty as set out above [i.e., 12 months on each of the four counts]. . . .
>
> ****
>
> If am granted community control at any point in my sentence and if I violate any of the conditions imposed, I may be given a longer period under court control, greater restrictions, or a prison term from the basic range. Community control may last five years.
>
> . . . .I am satisfied with my attorney's advi[c]e, counsel and competence. I am not under the influence of drugs or alcohol at this time. I have not been forced or threatened in any way to cause me to sign and offer this plea.
>
> ****
>
> I have read this form and I knowingly, voluntarily, and intelligently enter this guilty plea.

(*Id.,* Ex. 2).

On April 17, 2002, petitioner was sentenced to concurrent terms of six (6) months in the Hamilton County jail and five (5) years of "intensive supervision community control" for each offense. (*Id.,* Ex. 3). The filed "Judgment Entry" further provided in pertinent part: "The Court . . . advised the defendant that the maximum sentence possible for that degree of felony can be imposed if the defendant violates the terms and conditions of Community Control." (*Id.*).

Two years later, on April 8, 2004, a notice of "Community Control Sanction Violation" was filed with the Hamilton County Common Pleas Court, allegedly arising from new criminal charges brought against petitioner and from petitioner's failure to report to the Hamilton County Probation Department. (*Id.,* Ex. 4). A hearing was held on May 4, 2004, where petitioner was found "not guilty" of violating

2

community control. (*Id.*, Ex. 15, Tr. of May 4, 2004 Hearing, Tr. 3). The court based its finding on the fact that petitioner never had the opportunity to review the rules and conditions of his probation before his release on "intensive supervision community control." (*Id.*). Therefore, the court ordered that community control be restored and petitioner "continued on Intensive Supervision for a total period of five (5) years with an expiration date of April 16, 2007." (*Id.*, Ex. 5).

At the May 4, 2004 hearing, the trial court further advised petitioner:

> ....[I]f you fail to follow the terms and conditions of probation you will be violated and you'll be brought back before me. And if I determine that you are in violation, then I can impose a more restrictive community control sanction such as some period of time in the Hamilton County Justice Center or I can send you to prison.
>
> ****
>
> ....[I]f you are brought back before me and I determine to impose a prison sentence, the prison sentence I'll impose will be the maximum sentence. That's based on your prior criminal record, which is extensive. That maximum sentence would be since these are all felonies of the fifth degree, would be one year on each, in each Count One, Four, Five and Six, to be run consecutively.

(*Id.*, Ex. 15, Tr. of May 4, 2004 Hearing, Tr. 3-5).

Petitioner objected to the imposition of consecutive sentences, because he had been "given a concurrent sentence." (*Id.*, Tr. 6). The court responded to this objection in the following colloquy:

> I have explained the reason that I [will] impose[] a consecutive sentence.
>
> ****
>
> Because of your lengthy record and because you are – I believe if you are unsuccessful with this community control that you are a person who is likely to – most likely to recommit same or similar offenses again. I'm giving you community control. . . . I'm hoping that you are going to

3

successfully complete this.

THE DEFENDANT: Me too.

THE COURT: If you don't though, then a four year sentence is what I'll impose. . . .

(*Id.*, Tr. 6-7).[2]

Two months later, on July 13, 2004, a second notice of "Community Control Sanction Violation" was filed with the court charging petitioner with (1) failing to notify his probation officer immediately of changes in his home residence; and (2) failing to report to his probation officer on three occasions, which resulted in petitioner's being declared an absconder on June 8, 2004. (*Id.*, Ex. 6). At the hearing held on July 30, 2004, petitioner pleaded no contest to the failure to report charge, but with the assistance of counsel, challenged the imposition of consecutive sentences totaling four (4) years. (Doc. 8, Tr. of July 30, 2004 Hearing, Tr. 7-12).

Specifically, counsel argued as follows:

. . . .I think the original sentencing order is unclear on whether any time that may be imposed on this sentence will be run concurrently or consecutively.

I realize the Court put on another order at that last hearing that advised the defendant that he was going to be subject to four years[;] however, that appears to be contrary to the original sentencing order that said Counts 4, 5 and 6 to be run concurrent with each and concurrent with Count 1, and if so, if that is in that first sentencing order, that would be an increase in his sentence and subjecting him to double jeopardy.

He had already served a portion of incarceration on this charge; he's

---

[2] It is noted that the "Entry" filed May 19, 2004 restoring and continuing petitioner's intensive supervision memorialized this colloquy as follows: "The Court also advised the defendant that if he violated the terms and conditions of Community Control, the Court will impose a prison sentence of : four (4) years in the Ohio Department of Rehabilitation and Correction." (Doc. 8, Ex. 5).

4

> done six months. He then had a period of probation that was imposed.
>
> Now the Court is going to go back and going to give him an additional four years, even though he was notified that any time he was going to serve is going to be run concurrent.
>
> However, the Court did amend that at a later date and say that it was going to be four years. I believe under the double jeopardy procedure, you're not allowed or permitted to do that; it would be a violation of his constitutional rights.

(*Id.,* Tr. 10-11).

Later in the hearing, petitioner added that his original plea of guilt was "not knowingly and voluntarily made," because he did not know when he entered his plea to a six-month sentence and community control that he could be subjected to more than a six-month term of incarceration. (*Id.,* Tr. 18-19). When the court asked, "What did you think was going to happen if you violated probation?," petitioner responded that he thought he would be subjected to a longer term of "community control sanctions." (*Id.,* Tr. 19).

The court, however, was not persuaded by counsel's or petitioner's arguments and imposed maximum, consecutive sentences totaling four (4) years, with credit for time served. (*Id.,* Tr. 24-25; Ex. 8).

With the assistance of court-appointed counsel, petitioner timely appealed the July 30, 2004 community-control-violation decision to the Ohio Court of Appeals, First Appellate District. Counsel asserted as the sole assignment of error that the trial court committed prejudicial error in sentencing him to the maximum sentence of four (4) years for violating supervised release. (*Id.,* Ex. 9). Petitioner filed a *pro se* supplemental brief adding two more claims: (1) the trial court committed prejudicial error "in imposing prison for a community control violation when there was no notification of the specific prison term that would be imposed were there to be a violation of community control at the original sentencing hearing;" and (2) the trial court committed prejudicial error "in imposing consecutive sentences when in the original sentencing entry they were rendered to run concurrently." (*Id.,* Ex. 10).

On March 30, 2005, the Court of Appeals overruled petitioner's assignments

5

of error and affirmed the trial court's judgment. (*Id.*, Ex. 12). The court reasoned in relevant part as follows:

> ....In his first supplemental assignment of error, Weaver asserts that the trial court erred in sentencing him for his community-control violation without first informing him of the specific potential sentences he faced for a violation. This challenge is untenable.
>
> The trial court informed Weaver during the community-control-violation hearing on May 4, 2004, that he could be sentenced to four consecutive one-year terms. The Ohio Supreme Court recently concluded that a trial court had satisfied the notification requirements of R.C. 2929.19(B)(5) even though the trial court had not told the defendant of his potential sentence for a future violation until a hearing at which the defendant's community control was continued. The court stated that "[t]he notification requirement in R.C. 2929.19(B)(5) is meant to put the offender on notice of the specific prison term he or she faces if a violation of the conditions occurs." Here, the trial court put Weaver ... on notice of the specific term he faced during the May 4, 2004 hearing. We conclude that this notification meets the requirements of R.C. 2929.19(B)(5). . . . .
>
> The remaining assignments of error challenge the length of the sentence imposed by the trial court. In his second supplemental assignment of error, Weaver asserts that the trial court erred in sentencing him to consecutive sentences for a community-control violation where the original six-month sentences were to be served concurrently. The assignment of error designated by appellate counsel is that the trial court erred in imposing the maximum sentences.
>
> If a prison term is not required, R.C. 2929.15(A)(1) provides that the trial court "may directly impose a sentence that consists of one or more community-control sanctions authorized pursuant to section 2929.16, 2929.17, or 2929.18." The trial court sentenced Weaver to six months in the Hamilton County Justice Center and five years of community control. R.C. 2929.16(A)(2) does not permit consecutive six-month jail sentences as a component of community control sanctions. But, if conditions of community control are violated, the trial court may impose

6

a prison term pursuant to R.C. 2929.14. "The prison term, if any, imposed upon a violator pursuant to this division shall be within the range of prison terms available for the offenses for which the sanction that was violated was imposed ***." As recently held by this court, the United States Supreme Court's decision in *Blakely v. Washington*[, 542 U.S. 296 (2004),] does not apply to the findings made by the trial court under R.C. 2929.14(E)(4). Having reviewed the record, we conclude that the consecutive sentences that the trial court imposed were within the range of prison terms available for Weaver's offenses, and that the trial court complied with the requirements of R.C. 2929.14(E)(4). . . .

In the sole assignment of error submitted by counsel, Weaver claims that the trial court erred in sentencing him to the maximum sentences. With little discussion, Weaver asserts that he was placed in double jeopardy by the trial court, that he was denied due process of law, that his sentence constituted cruel and unusual punishment, and that he was subjected to an *ex post facto* procedure. We have reviewed the record and have determined that none of the alleged constitutional violations is present.

Weaver also asserts that the trial court did not comply with R.C. 2929.13(B). That section requires that, before sentencing a defendant to a prison term for a fourth- or fifth- degree felony, the trial court must find that a prison term is consistent with the purposes and principles of sentencing, that the defendant is not amenable to community control, and that one of nine factors listed applies to the offense. The transcript of the sentencing hearing makes clear that the trial court made the required findings, including a finding that Weaver had served several prior prison terms. The record supports those findings.

We also note that the maximum sentences imposed by the trial court are not contrary to the United States Supreme Court's recent decisions in *Blakely* or *United States v. Booker*[, 543 U.S. 220 (2005)]. When sentencing Weaver to maximum sentences, the trial court found that, because of his many prior convictions, Weaver "pose[d] the greatest likelihood of recidivism." As discussed in this court's decision in [another case], this basis for imposing a maximum sentence does not violate *Blakely*. Having reviewed the record, we conclude that the trial court's finding that Weaver posed the greatest likelihood of recidivism

7

was amply supported by the record. . . .

(*Id.,* pp. 2-5) (footnotes to case citations omitted).

Proceeding *pro se,* petitioner timely appealed to the Ohio Supreme Court, asserting two propositions of law: (1) "When a violation of a community-control sanction is not found, is such a hearing a 'sentencing hearing' where the trial court may provide the notification that a prison-term may be imposed [for] a violation of a community-control?"; and (2) "Does a trial court have the authority to modify a sentence once [it has] been executed by changing the counts to be served from concurrent to consecutive?" (*Id.,* Ex. 13). On September 7, 2005, the state supreme court denied leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.* Ex. 14).[3]

In the meantime, while pursuing his appeal from the trial court's July 30, 2004 community-control-violation decision, petitioner took various *pro se* actions to challenge his conviction in the underlying criminal case.

First, on August 5, 2004, petitioner filed a motion to withdraw his guilty plea that was entered on February 13, 2002. (*Id.,* Ex. 21). In support of this motion, petitioner argued that he had agreed only to "a sentence of 6 months in the Hamilton County Justice Center and community control with treatment," and therefore, the imposition of the four-year sentence upon finding him guilty of a community-control violation rendered his guilty plea "[un]knowingly, [in]voluntarily and [un]intelligently made." (*Id.*). On January 19, 2006, the trial court denied the motion, stating that "Defendant tendered his Motion subsequent to imposition of sentence and no manifest injustice exists to support a withdrawal of plea." (*Id.,* Ex. 23).

---

[3]On July 1, 2005, while his appeal was pending before the Ohio Supreme Court, petitioner filed a *pro se* application for reopening of his appeal with the Ohio Court of Appeals, First Appellate District. (*Id.,* Ex. 15). In this application filed pursuant to Ohio R. App. P. 26(B), petitioner presented eight assignments of error challenging the effectiveness of his appellate counsel. (*Id.*). On September 27, 2005, the Ohio Court of Appeals denied the reopening application based on petitioner's failure to timely file the application "within ninety days from the date on which the court of appeals journalized its judgment" and failure to demonstrate good cause for the filing delay. (*Id.,* Ex. 18). Petitioner did not attempt to appeal this decision to the Ohio Supreme Court.

8

Next, on September 9, 2004, petitioner filed a "Motion To Correct/Amend Sentence." (*Id.*, Ex. 24). The motion was denied on January 19, 2006 because the community-control-violation sentence had been "upheld by the First District Court of Appeals, . . . evidencing that no amendment or correction is required or necessitated." (*Id.*, Ex. 26).

Finally, on March 11, 2005, petitioner filed a petition for post-conviction relief, presenting as the sole ground for relief that: "Once an agreement is reached with the state and accepted by the Court and executed by the defendant, the Court is without jurisdiction to change the term of that agreement without allowing the defendant, upon his request, to withdraw said plea because the original plea was not then knowingly, volunt[a]rily and intelligently made. . . ." (*Id.*, Ex. 27). On January 19, 2006, the trial court denied the post-conviction petition "as the substance of this Petition is the same as the substance of Defendant's Motion to Withdraw Guilty Plea filed September 9, 2004 which the Court has denied." (*Id.*, Ex. 30).

Petitioner filed appeals to the Ohio Court of Appeals, First Appellate District, from the trial court's three rulings on January 19, 2006. (*Id.*, Ex. 31). The appeals were consolidated and scheduled for hearing on November 28, 2006. (*See id.*, Ex. 32). Upon review of the updated computerized docket records maintained by the Hamilton County and Ohio Supreme Court Clerk's Offices, which may be accessed via the internet, it appears that the Ohio Court of Appeals affirmed the trial court's decisions on January 24, 2007, and that petitioner did not seek leave to appeal further to the Ohio Supreme Court in this matter.

On May 3, 2005, while his post-conviction motions were pending before the trial court for ruling, petitioner also filed a *pro se* motion for delayed appeal with the Ohio Court of Appeals, First Appellate District, from the original judgment of conviction and sentence entered April 17, 2002. (*Id.*, Ex. 19). Petitioner claimed as cause for his delay in filing that he is not an attorney and was unaware of the thirty-day time limit for filing an appeal. (*Id.*, p. 2). On May 26, 2005, the Ohio Court of Appeals overruled petitioner's motion for delayed appeal on the ground that petitioner had "failed to provide sufficient reasons for failure to perfect an appeal as of right." (*Id.*, Ex. 20). Petitioner did not attempt to appeal this decision to the Ohio Supreme

9

Court.[4]

The instant federal habeas corpus petition, which petitioner claims was "placed in the prison mailing system" on July 17, 2006, was stamped as "filed" on September 9, 2006 after petitioner paid the $5.00 filing fee upon the denial of his motion for leave to proceed *in forma pauperis*. (*See* Docs. 1, 3). Petitioner alleges two grounds for relief.

> **Ground One:** Being imprisoned for a community-control violation when there was no notice given a[t] the "sentencing hearing" of a specific term if violated.
>
> **Supporting Facts:** . . . .[T]he trial court failed to give the notice at the original sentencing hearing, but gave the notice after finding the defendant Not Guilty at community-control violation hearing. Nowhere in law is a person found not guilty, then sentenced. The only place the warning can be given is a[t] "sentencing hearing."
>
> **Ground Two:** Sentence being changed from concurrent to consecutive after being executed.
>
> **Supporting Facts:** I was found guilty on (4) counts. I was sentenced to (6) months on each count to be served concurrently. After violating community-control, I was sentenced to (12) months on each count to be served consecutively.

(Doc. 3, pp. 6-7).

In the return of writ, respondent concedes that the petition is not barred from review on statute of limitations grounds. (*See* Doc. 8, Brief, p. 10). It further appears that petitioner has exhausted all available state remedies with respect to his grounds for relief. Respondent contends that petitioner's claims for relief should be denied as lacking "any merit." (*Id.*, pp. 10-22).

---

[4]It is noted that, according to respondent, petitioner did file two *pro se* petitions for writ of habeas corpus with the Ohio Supreme Court, one on August 25, 2004 and the second on October 10, 2006. (Doc. 8, Brief, pp. 8-9). The Ohio Supreme Court *sua sponte* dismissed both cases. (*See id.*). These pleadings and rulings have not been made part of the record in this case.

10

## OPINION

## Petitioner Is Not Entitled To Relief Because His Constitutional Claims Lack Merit And His Claims Of Error Under State Law Are Not Cognizable In This Federal Habeas Proceeding

In the petition, petitioner challenges the four-year aggregate term of imprisonment that was imposed when his five-year term of supervised release was revoked on July 30, 2004. Petitioner essentially claims that the sentence is improper because (1) he was not given notice of the consequences of violating the terms and conditions of community control at the original sentencing hearing in February 2002; and (2) he had already served the concurrent six-month jail terms imposed for each offense when he was subjected to the additional four-year term of incarceration upon the revocation of supervised release. (*See* Doc. 3, pp. 6-7).

As an initial matter, to the extent petitioner contends the state trial court committed error under Ohio law in sentencing him to four (4) years in prison for violating community-control sanctions, his claims raise issues of state law only that are not cognizable in this federal habeas corpus proceeding. A federal court may review a state prisoner's habeas corpus petition only on the ground that the challenged confinement violates the Constitution, law or treaties of the United States and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984). *Cf. Hightower v. Ashley,* 92 F.3d 1185 (table), No. 95-6376, 1996 WL 435209 (6th Cir. Aug. 1, 1996) (unpublished) (claim of state-law sentencing error "does not rise to a constitutional dimension cognizable upon federal habeas review," absent a showing of a denial of fundamental fairness in the trial process).[5]

Moreover, the Court is unable to ascertain a cognizable federal constitutional basis for relief stemming from petitioner's claims of error.

First, petitioner has not demonstrated that he was denied fundamental fairness

---

[5] *See also Xie v. Edwards,* 35 F.3d 567 (table), No. 93-4385, 1994 WL 462143, at **2 (6th Cir. Aug. 25, 1994) (unpublished) (district court "properly found that whether the [state] trial court abused its discretion in denying Xie's motion to withdraw his plea is a question governed by Ohio's statutes and case law, and that "[s]uch state grounds cannot support federal habeas relief, absent a showing that the alleged error rendered the proceedings fundamentally unfair").

because he was not specifically notified at the time of his original sentencing in 2002 that, if were found guilty of violating the five-year community-control sanction, he could be subjected to an additional four-year prison term.

Contrary to petitioner's contention in his first ground for relief that he was not notified of the possibility of an increased prison term for violating community control, it appears from the written plea entry executed by petitioner in February 2002 that he was informed and understood at the time he entered his plea that if he were granted community control as part of his sentence and were to violate any of the conditions imposed, he might "be given a longer period under court control, greater restrictions, *or a prison term from the basic range.*" (*See* Doc. 8, Ex. 2) (emphasis added). Moreover, the sentencing entry of April 17, 2002 expressly provides that petitioner was advised at sentencing that "the maximum sentence possible . . . can be imposed if the defendant violates the terms and conditions of Community Control." (*Id.,* Ex. 3).

Although the original plea and sentencing entries did not specifically warn petitioner that consecutive, as well as maximum, sentences could be imposed for the violation of community-control sanctions, petitioner was placed on explicit notice that he would be subjected to maximum, consecutive sentences totaling four (4) years on May 4, 2004, when the trial court continued petitioner in community control after acquitting him on the first community-control-violation charge filed in April 2004. Such notice was sufficient to meet state statutory requirements set forth in Ohio Rev. Code §§ 2929.15(B) and 2929.19(B)(5). *See State v. Fraley,* 821 N.E.2d 995, 998-99 (Ohio 2004) (holding that the applicable state statutory provisions, requiring the trial court at the time of sentencing to notify an offender subjected to a community-control sanction of the specific prison term that may be imposed for a violation of the conditions of the sanction, are satisfied when the court at a second hearing on a community-control-violation-charge "notifies the offender of the specific prison term that may be imposed for a subsequent violation occurring after this second hearing"). Moreover, in light of the court's specific admonition given at the May 4, 2004 hearing, as well as the general warnings contained in the original plea and sentencing entries, petitioner is unable to demonstrate that error of federal constitutional magnitude occurred.

Second, petitioner has not demonstrated that he is entitled to relief based on any claim that the guilty plea itself was unconstitutionally obtained. For one thing, because petitioner neither challenged the constitutionality of his guilty plea on direct

12

review of the July 30, 2004 community-control-violation decision nor appealed to the Ohio Supreme Court from the Court of Appeals' January 24, 2007 decision affirming the denial of his motion to withdraw his guilty plea, it appears petitioner has waived any claim that he did not enter his plea knowingly, voluntarily and intelligently. *Cf. Easton v. Seabold,* 41 F.3d 1506 (table), No. 93-6208, 1994 WL 637725, at *1 (6th Cir. Nov. 10, 1994) (unpublished).

In any event, even assuming, *arguendo,* such a claim is subject to review on the merits, petitioner must show that the trial court's refusal to allow him to withdraw an already-entered guilty plea implicates constitutional concerns. Once a guilty plea has been knowingly and voluntarily entered, a defendant has no absolute, constitutional right to withdraw it. *Jacoy v. Anderson,* No. 80-1220 (6th Cir. Feb. 16, 1981) (unpublished) (available on LEXIS); *see also United States ex rel. Scott v. Mancusi,* 429 F.2d 104, 109-110 (2nd Cir. 1970), *cert. denied,* 402 U.S. 909 (1971); *Hoffman v. Jones,* 159 F.Supp.2d 648, 655 (E.D. Mich. 2001), *aff'd,* 53 Fed.Appx. 342 (6th Cir. Dec. 17, 2002), *cert. denied,* 540 U.S. 1193 (2004). Therefore, in the absence of a constitutional violation in the taking of the plea, a trial court's abuse of discretion in denying a subsequent motion to withdraw the plea does not trigger constitutional concerns. *Hoffman,* 159 F.Supp.2d at 655; *see also Mancusi,* 429 F.2d at 110; *Carrasquillo v. LeFevre,* 504 F. Supp. 129, 131 (S.D.N.Y. 1980); *cf. Stinson v. Turner,* 473 F.2d 913, 917 (10th Cir. 1973); *United States v. Waucaush,* 230 F.3d 1361 (table), No. 99-1316, 2000 WL 1478361, at **3 (6th Cir. Sept. 27, 2000) (unpublished) (involving motion to withdraw a guilty plea prior to sentencing in federal criminal case).

Petitioner has suggested that a constitutional violation occurred in the taking of his plea because he could not knowingly, voluntarily or intelligently enter his plea without first being informed that he could be subjected to a four-year prison sentence for violating the terms and conditions of the community-control sanction.

The Fourteenth Amendment's Due Process Clause guarantees that a guilty plea must be made voluntarily and intelligently with sufficient awareness of the relevant circumstances and likely consequences. *Boykin v. Alabama,* 395 U.S. 238, 242 (1969); *see also Brady v. United States,* 397 U.S. 742, 748 (1970); *King v. Dutton,* 17 F.3d 151, 153 (6th Cir.), *cert. denied,* 512 U.S. 1222 (1994). In *Brady,* the Supreme Court adopted the following standard for determining the voluntariness of a guilty plea:

13

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats ..., misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady*, 397 U.S. at 755 (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), *rev'd on other grounds*, 356 U.S. 26 (1958)). The voluntariness of a guilty plea must be assessed in light of all the relevant circumstances surrounding the plea. *Id.* at 749; *King*, 17 F.3d at 153 (and cases cited therein).

For a guilty plea to be deemed voluntarily entered with a "sufficient awareness of the relevant circumstances and likely consequences," the defendant must be correctly informed of the maximum sentence that could be imposed. *King*, 17 F.3d at 154; *Hart v. Marion Corr. Instit.*, 927 F.2d 256, 259 (6th Cir.), *cert. denied*, 502 U.S. 816 (1991). Although the defendant must be apprised of such "direct consequences" of the plea, the court is under no constitutional obligation to inform the defendant of all the possible "collateral consequences" of the plea. *King*, 17 F.3d at 153; *see also El-Nobani v. United States*, 287 F.3d 417, 421 (6th Cir.), *cert. denied*, 537 U.S. 1024 (2002).

The courts that have addressed the issue-at-hand have determined that the court is not required to advise the defendant about the consequences of the revocation of probation, which is a proceeding triggered by the defendant's own actions subsequent to sentencing and thus deemed a "collateral consequence" of his guilty plea. *See, e.g., Parry v. Rosemeyer*, 64 F.3d 110, 114-115 (3rd Cir. 1995), *cert. denied*, 516 U.S. 1058 (1996); *United States v. Juvenile Male*, 118 Fed.Appx. 165, 167 (9th Cir. Nov. 24, 2004) (not published in Federal Reporter) (involving the alleged failure of the sentencing court to inform a juvenile offender that he could be incarcerated beyond his twenty-first birthday upon revocation of his probationary sentence); *Ramirez v. Secretary, Dep't of Corr.*, No. 8:05cv104-T-23EAJ, 2007 WL 2113659, at *4 (M.D. Fla. July 23, 2007) (unpublished); *cf. United States v. Littlejohn*, 224 F.3d 960, 965 (9th Cir. 2000) (citing *Torrey v. Estelle*, 842 F.2d 234, 236 (9th Cir. 1988), and *United States v. Kikuyama*, 109 F.3d 536, 537 (9th Cir. 1997)) ("where the consequence is contingent upon action taken by an individual or individuals other th[a]n the sentencing court–such as another governmental agency *or the defendant himself*–the consequence is generally 'collateral'") (emphasis added).

14

Here, petitioner has suggested he entered his plea in exchange for concurrent minimum sentences of only six months in jail. However, under the terms of the executed plea agreement, it appears no such agreement was made. Instead, as discussed earlier, petitioner was informed and stated that he understood that he could be sentenced to up to twelve months for each offense, and that if he were "granted community control at any point in [his] sentence and if [he were to] violate any of the conditions imposed, [he could] be given a longer period under court control, greater restrictions, *or a prison term from the basic range.*" (*See* Doc. 8, Ex. 2).

Therefore, contrary to petitioner's contention, it appears from the record that petitioner entered his plea knowingly and voluntarily, not in reliance on any promise or representation that he would only be subjected to a six-month jail sentence; rather, it appears that petitioner was expressly informed when he entered his plea that he could receive a sentence up to a maximum of four (4) years in prison, and that if he were granted community control as part of the sentence, a prison term from this "basic range" could be imposed for his violation of the conditions of the supervised release sanction.[6] *Cf. Doggendorf v. White,* No. 4:07cv11638, 2007 WL 2463229, at *3 (E.D. Mich. Aug. 28, 2007) (unpublished) (rejecting claim that the trial court breached the terms of the plea agreement by sentencing petitioner to prison upon the revocation of probation, because (1) petitioner was initially sentenced in accordance with the plea and sentencing agreement to two-years' probation with ninety days in the county jail; (2) petitioner was advised at the time of sentencing that he could be subject to future incarceration if he violated the terms of probation; and (3) "nothing in the terms of the original plea agreement indicated that Petitioner could withdraw his plea if his probation was subsequently revoked because of Petitioner's noncompliance with the terms of probation"); *see also United States v. Chen,* 837 F.Supp. 1225, 1227 (S.D. Fla. 1993) (rejecting the premise that under the terms of the plea agreement, defendant was "promised unsupervised irrevocable probation"), *aff'd,* 25 F.3d 1061 (11th Cir. 1994), *cert. denied,* 513 U.S. 1166 (1995).

The rationale provided by the district court in *Doggendorf, supra,* 2007 WL 2463229, at *3, also applies to the case-at-hand:

In the present case, the trial court complied with the terms of the original

---

[6] Indeed, it appears that petitioner was advised again when he was sentenced on April 17, 2002 that the "maximum sentence possible" could be imposed if he violated the terms and conditions of community control. (*See* Doc. 8, Ex. 3).

15

plea and sentencing agreement by sentencing Petitioner to probation with a county jail sentence. Petitioner repeatedly violated the terms of his probation, which finally le[]d the trial court to revoke his probation. "[I]f revoking probation when a Defendant violates its terms breaches a plea bargain granting probation, then restrictions on probation in effect would be unenforceable." *United States v. Brown,* 583 F.2d 915, 917 (7th Cir. 1978)[, *cert. denied,* 439 U.S. 875 (1978)]. As another court indicated in rejecting a similar claim, "[i]f this Court were to accept the Defendant's interpretation, the logic of the plea agreement would force this Court to continually re-impose probation upon any violation committed by the Defendant; or, in the alternative, it would compel the government to try the Defendant upon stale evidence and allow him to escape the agreed probation, merely because, years after the original offense, the Defendant chose to violate the conditions of his release and withdraw his plea. Even though the Defendant might favor such a reading of the agreement, the facts do no warrant such an extreme result." . . . . *Chen,* 837 F.Supp. [at] 1227. . . .

Third, petitioner is not entitled to habeas relief to the extent he contends in his second ground for relief that a double jeopardy violation occurred when the trial court imposed an additional four-year prison term for violating the community-control sanction after he had already served the concurrent six-month jail sentence set forth in the original sentencing entry of April 17, 2002. This claim is without merit. The courts, including the Sixth Circuit, have unanimously held that the Double Jeopardy Clause is not implicated when an additional term of imprisonment is imposed upon the revocation of supervised release and probation, because the revocation of supervised release is not considered a new punishment "but rather is attributable to the original conviction." *See, e.g., United States v. Flanory,* 45 Fed.Appx. 456, 462 (6th Cir. Sept. 3, 2002) (not published in Federal Reporter); *see also United States v. Dees,* 467 F.3d 847, 853 (3rd Cir. 2006), *cert. denied,* __ S.Ct. __, 76 U.S.L.W. 3157 (U.S. Oct. 1, 2007) (No. 06-10826); *United States v. Amer,* 110 F.3d 873, 884 (2nd Cir.), *cert. denied,* 522 U.S. 904 (1997); *United States v. Coleman,* No. 06-4222, 2007 WL 2683718, at *1 (4th Cir. Sept. 12, 2007) (unpublished) (citing and quoting *United States v. Evans,* 159 F.3d 908, 913 (4th Cir. 1998) ("A term of supervised release, the revocation of that term, and any additional term of imprisonment imposed for violating the terms of the supervised release are all part of the original sentence.")); *United States v. Cazares-Cazares,* 68 Fed.Appx. 793, 794 (9th Cir. June 13, 2003) (not published in Federal Reporter) (citing *United States v. Soto-Olivas,* 44 F.3d 788, 790-

16

91 (9th Cir.), *cert. denied,* 515 U.S. 1127 (1995)).

Finally, as respondent points out in the return of writ (Doc. 8, Brief, p. 14), petitioner has never claimed that the sentence imposed by the trial court on July 30, 2004 when his supervised release was revoked violated his Sixth Amendment right to have sentencing factors considered by a jury in light of the Supreme Court's *Blakely/Booker* decisions. Therefore, any such claim is waived.[7]

---

[7] The Court recognizes that although petitioner never raised a Sixth Amendment claim on appeal from the trial court's July 30, 2004 community-control-violation decision, the Ohio Court of Appeals did consider *Blakely* and *Booker* in rejecting the assignments of error raised by petitioner and his appellate counsel. (*See* Doc. 8, Ex. 12). The court's analyses of these cases was made in accordance with state case-law then in effect, but which subsequently changed when the Ohio Supreme Court held in *State v. Foster,* 845 N.E.2d 470 (Ohio 2006), that certain provisions of Ohio's sentencing statute were rendered unconstitutional by *Blakely* and *Booker.* The Ohio Supreme Court refused to extend *Foster*'s applicability, however, to cases like petitioner's that were no longer pending on direct review when *Foster* was decided on February 27, 2006. *See Foster,* 845 N.E.2d at 499. Moreover, despite the Ohio Court of Appeals' flagging of a potential *Blakely/Booker* issue, petitioner did not assert such a claim on further appeal to the Ohio Supreme Court or in the instant petition (*see* Doc. 3 & Doc. 8, Ex. 13); therefore, the claim is deemed waived.

In any event, although it appears that neither the Supreme Court nor the Sixth Circuit have reached the issue as to whether *Blakely/Booker* applies to sentences imposed on the revocation of probation and supervised release, the courts that have addressed the question have concluded that *Blakely/Booker* does not extend to such a sentencing decision, which is generally discretionary with the trial court in a proceeding where the "full panoply of rights" due a defendant in a criminal prosecution does not apply. *See, e.g., United States v. Dees,* 467 F.3d 847, 854-55 (3rd Cir. 2006) (and cases cited therein), *cert. denied,* __ S.Ct. __, 76 U.S.L.W. 3157 (U.S. Oct. 1, 2007) (No. 06-10826); *see also United States v. Kiezart,* __ F.3d. __, No. 07-1397, 2007 WL 2938374, at *1-2 (7th Cir. Oct. 10, 2007) (to be published) *United States v. Huerta-Pimental,* 445 F.3d 1220, 1223-25 (9th Cir.) (and cases cited therein), *cert. denied,* 127 S.Ct. 545 (2006); *United States v. Carlton,* 442 F.3d 802, 807-10 (2nd Cir. 2006); *United States v. Beverly,* No. 06-1229, 2007 WL 2671343, at *2 (10th Cir. Sept. 6, 2007) (unpublished) (citing *United States v. Tedford,* 405 F.3d 1159, 1161 (10th Cir. 2005)); *United States v. Garnett,* 238 Fed.Appx. 527, at *1 (11th Cir. July 2, 2007) (per curiam) (not published in Federal Reporter), *petition for cert. filed,* No. 07-7121 (U.S. October 10, 2007); *United States v. Gonzalez,* 166 Fed.Appx. 107, 108 (5th Cir. Feb. 6, 2006) (not published in Federal Reporter).

17

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 3) be **DENIED** with prejudice.

2. A certificate of appealability should not issue because petitioner has failed to make a substantial showing of the denial of a constitutional right, which may be remedied in this federal habeas corpus proceeding, based on his claims for relief addressed herein. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). *Cf. Doggendorf, supra,* 2007 WL 2463229, at *4 (denying a certificate of appealability in an analogous case).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis. See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997); *cf. Doggendorf, supra,* 2007 WL 2463229, at *4 (in analogous case, denying leave to appeal *in forma pauperis,* "because the appeal would be frivolous").

Date: 11/6/07
cbc

Timothy S. Hogan
United States Magistrate Judge

J:\BRYANCC\2007 habeas orders\06-557denypet.gp-commcontrolrev-sentence.wpd

18

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Dessalines Weaver,
    Petitioner

vs                            Case No. 1:06cv557
                               (Spiegel, S.J.; Hogan, M.J.)

Ernie Moore,
    Respondent

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled action. Pursuant to Fed. R. Civ. P. 72(b), any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee |
| | B. Received by (Printed Name)    C. Date of Delivery |
| 1. Article Addressed to:<br><br>Dessalines Weaver<br>A476896<br>Lebanon Corr. Inst.<br>PO Box 56<br>Lebanon, OH 45036 | D. Is delivery address different from item 1? ☐ Yes<br>   If YES, enter delivery address below: ☐ No |
| | 3. Service Type<br>☒ Certified Mail    ☐ Express Mail<br>☐ Registered    ☐ Return Receipt for Merchandise<br>☐ Insured Mail    ☐ C.O.D. |
| | 4. Restricted Delivery? (Extra Fee)    ☐ Yes |
| 2. Article Number (Transfer from service label) | 7007 1490 0001 0562 5304 |

PS Form 3811, August 2001    Domestic Return Receipt    102595-01-M-2509

1:06cv557 Doc. 10